PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL D. PIPINO, *et al*., | ) | CASE NO.  4:11CV00129 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| JEFFREY ONUSKA, *et al*., | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** |

Before the Court are Defendants' Motion to Partially Dismiss Plaintiffs' Complaint and Request for Leave To File Answer Within Fourteen Days After Ruling (ECF No. 1-2), and Plaintiffs' Motion to Remand to State Court (ECF No. 10).  The Court grants Plaintiffs' motion to remand, making it unnecessary to rule upon Defendants' motion to dismiss.

Remand is granted on alternative grounds– the removal was untimely and the complaint does not allege causes of action arising under federal law.

## I.  Background

Securities brokerage customers Samuel and Loraine Pipino ("the Pipinos") began a relationship with Defendants' brokerage firm "for the purposes of obtaining the Defendants' business, tax, and investment advice, and related services." ECF No. 1-1 at 5.  The Pipinos claim that despite their clear designation of conservative risk tolerance, Defendants recommended and

(4:11CV00129)

advised risky investments counter the Pipinos' conservative risk tolerance and charged excessive

and unreasonable fees.  ECF No. 1-1 at 6-7.  As a result, the Pipinos suffered heavy losses

amounting to more than one million dollars.  ECF No. 1-1 at 6-7.

The Pipinos sued Defendants in the Court of Common Pleas for Mahoning County, Ohio,

alleging the following claims:

| | |
|---|---|
| Count I: | Breach of Contract |
| Count II: | Unsuitability |
| Count III: | Breach of Fiduciary Duty |
| Count IV: | Negligence/Gross Negligence |
| Count V: | Negligent Misrepresentation |
| Count VI: | Churning |

ECF No. 1-1 at 6-14.  In response, Defendants filed a motion seeking dismissal of the (1)

Unsuitability and Churning claims alleging that they fail to state claims upon which relief can be

granted; and (2) Defendants FirstMerit Corporation, FirstMerit Securities, Inc., FirstMerit

Advisors alleging that they had no relationship or dealings with the Pipinos.  ECF No. 1-2 at 1.

The Pipinos opposed the motion for partial dismissal.  ECF No. 1-3.

Based upon their review of the Pipinos' brief in opposition to the motion to dismiss,

Defendants removed, theorizing that the Pipinos had "'elected' to frame their churning claim as a

securities fraud claim, rather than a claim for breach of fiduciary duty, and, by doing so, the

Pipinos [had] invoked the protections of the federal securities laws to support their churning

claim (as well as their unsuitability claim)," pursuant to 15 U.S.C. § 78aa, which confers upon

federal courts exclusive jurisdiction over securities fraud claims arising under Sections 10(b) and

10(b)(5) of the Securities Exchange Act of 1934.  ECF No. 1 at 3.

-2-

(4:11CV00129)

The Pipinos moved to remand averring that the complaint contains no claims arising under federal law.  ECF No. 10 at 2.  Recognizing the heft that the formulation of the claims in the complaint would wield, Defendants argue that the complaint artfully pleads federal claims as state claims, raises a federal question or is completely preempted by federal law, obviating the effect of the well-pleaded complaint rule, which is discussed in greater detail below.

After removal, Defendants withdrew the portion of their motion seeking to dismiss the unsuitability and churning claims, leaving only the request to dismiss the FirstMerit Defendants named above.  ECF No. 5 at 1.

## II.  Discussion

With limited exception, state courts are competent to interpret and apply federal law.  *See Zwicker v. Koota*, 389 U.S. 241, 245 (1967) ("During most of the Nation's first century, congress relied on the state courts to vindicate essential rights arising under the Constitution and federal laws.").  Ordinarily, federal jurisdiction is determine by what cause of action is pled, not by the defenses raised or even the basis of what claim can prevail.  "A federal question 'is presented' when the complaint invokes federal law as a basis for relief.  It does not suffice that the facts alleged in support of an asserted state-law claim would also support a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003) ( J. Scalia dissenting).

The party who brings the suit decides on what law she will rely.  *See Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913).  The Pipinos initiated a lawsuit in an Ohio state court based solely upon Ohio law.  Despite the absence of federal law, the Pipinos concede that the conduct alleged as constituting a violation of state law would also constitute a violation of

-3-

(4:11CV00129)

federal law.  ECF No. 13 at 5.  They also acknowledge that, even if the allegations made do not, as the Pipinos hope, support a state law claim and would only support a federal law claim, federal jurisdiction does not lie.  The fate of the Pipinos' churning and unsuitability claims are poignantly conveyed in the Pipinos' reply brief:

> If Ohio recognizes churning and unsuitability as common-law claims, then the state court can hear and decide them.  If Ohio does not recognize churning and unsuitability as common-law claims, ten the state court can dismiss them.  But in neither case does the Pipinos' argument make a federal claim, or give any other basis for federal jurisdiction.

ECF No. 13 at 3.

### A.  Removal based upon Federal Question Jurisdiction

Advocating that the unsuitability and churning claims raise substantial federal questions arising under the Securities Exchange Act of 1934 over which federal courts have exclusive jurisdiction,  Defendants allege federal jurisdiction and oppose remand.  ECF No. 12 at 1.  While acknowledging that the Court must look, in the first instance, to the language of the complaint itself when determining the propriety of removing a case based on federal question jurisdiction, Defendants urge that, under limited circumstances, defendants may force even reluctant plaintiffs into federal court.  Relying upon this device, Defendants argue that the instant matter should remain in federal court due to the existence of substantial federal questions artfully disguised as state claims and, possibly, the complete preemption doctrine.  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007); ECF No. 12 at 2.

(4:11CV00129)

## 1.  Actions Removable, Generally

Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant.  Section 1441, 28 U.S.C., authorizes removal of civil actions within the original jurisdiction of the federal district courts.  Section 1441(b) reads, in part:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. . .[1]

In the absence of diversity, a defendant may remove a civil action from state court to federal court only if the plaintiff's allegations establish "original jurisdiction founded on a claim or right arising under" federal law.  28 U.S.C. § 1441(b).  "To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses[.]" *Mikulski*, 501 F.3d at 560 (citing *Beneficial Nat'l Bank*, 539 U.S. at 6). Under this rule, a federal question must be presented on the face of the plaintiff's complaint, as the complaint stands at the time the notice of removal is filed, and the complaint must be "well-pleaded," meaning pleaded in conformity with the rules of pleading. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) ("Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule.").  "The well-pleaded-complaint

---

[1]  The statute explicitly provides that, when removal is sought on the basis of a claim presenting a federal question, the citizenship and residence of the parties are immaterial.  *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 202 (6th Cir. 2004).  This permits even a defendant who is a resident or citizen of the forum state may remove a federal question case.  *Id.* at 200-01.  Generally, removal based on Sections 1441(a) and (b) embrace the same class of cases as is covered by 28 U.S.C. § 1331, the original federal question jurisdiction statute.  *Id.* at 202-03.

(4:11CV00129)

rule makes the plaintiff master of the claim; he or she may avoid federal jurisdiction by exclusive

reliance on state law."  *Catepillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal quotations

and punctuation omitted).

### a. The "Well-Pleaded Complaint" Rule

The existence of  federal question jurisdiction is governed by the well-pleaded complaint

rule which provides that federal question jurisdiction exists only when a federal question is

presented on the face of a properly pleaded complaint.  *Caterpillar*, 482 U.S. at 392.  The

Supreme Court has explained:

> [W]hether a case is one arising under the Constitution or a law or treaty of the
> United States, in the sense of the jurisdictional statute[,] . . . must be determined
> from what necessarily appears in the plaintiff's statement of his own claim in the
> bill or declaration, unaided by anything alleged in anticipation of avoidance of
> defenses which it is thought the defendant may interpose.

*Aetna Health Inc.*, 542 U.S. at 207.

The existence of a federal defense does not normally create statutory "arising under"

jurisdiction, and "a defendant may not [generally] remove a case to federal court unless the

plaintiff's complaint establishes that the case 'arises under' federal law."  *Aetna Health Inc.*, 542

U.S. at 207 (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 10).[2]  It follows that the federal claim

or right that provides the predicate for removal must not appear for the first time in the

defendant's answer by way of defense.  *City of Warren v. City of Detroit*, 495 F.3d 282, 286 (6th

---

[2]  In *Franchise Tax Bd. of Cal.*, the Court reversed the decisions of both the district court
and the Ninth Circuit Court of Appeals, and held that a removed suit brought to enforce state tax
levies on an employee benefit trust fund created under the Employment Retirement Income
Security Act of 1974 (ERISA) did not arise under federal law for purposes of federal question
jurisdiction, and that the case had to be remanded to state court.  463 U.S. at 27-28.

(4:11CV00129)

Cir. 2007) (citing well-pleaded complaint rule for determining removability as a federal question case, and noting that a case may not be removed on the basis of a federal defense); *Litchfield v. United Parcel Service, Inc.,* 136 F. Supp. 2d 756, 758 (S.D. Ohio 2000) (stating removal was inappropriate when the federal issue relating to plaintiff's state law conversion claim was presented as a defense).

As indicated by Defendants, at least three doctrines provide exceptions to the well-pleaded complaint rule–artful pleading doctrine; complete preemption, and substantial federal question.  *Mikulski,* 501 F.3d at 560; *Franchise Tax Bd. of Cal.,* 463 U.S. at 9-10; *Miller v. Champion Enter. Inc.,* 346 F.3d 660, 671 (6th Cir. 2003); *see also Beneficial Nat'l Bank,* 539 U.S. at 8.

### (1). "Artful Pleading" Doctrine

The artful pleading doctrine is implicated when "a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute." *Mikulski,* 501 F.3d at 561 (citing *Franchise Tax Bd. of Cal.,* 463 U.S. at 22).  Relying upon this doctrine, Defendants argue that the Pipinos "framed their Unsuitability and Churning claims" in a manner to avoid federal jurisdiction despite federal jurisdiction being appropriate because the case is based on federal securities law.  ECF No. 12 at 3.  The Pipinos maintain that they "are not making claim[s] that arise[] under the Securities Exchange Act; they are making common law claims."  ECF No. 13 at 4.

The Sixth Circuit has found that federal securities law and state common law fraud are distinguishable because "[t]he § 10(b)/Rule 10b-5 claim is not identical to common law fraud,

(4:11CV00129)

but [] it is very useful to analogize between the common law and § 10(b)/Rule 10b-5."[3]

*Mansbach v. Prescott, Ball, & Turben*, 598 F.2d 1017, 1024, 1027 (6th Cir. 1979) (internal

citations, punctuations and footnotes omitted).

 Turning first to the common law, churning is more akin to constructive fraud than to

actual fraud.[4]  *Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal. App. 2d 690, 711-12

(1968).  The Sixth Circuit held that "[t]he elements of a claim for actual fraud under Ohio law

are similar to a Rule 10b-5 claim: an actual or implied material misrepresentation or concealment

of a matter of fact, knowledge of the falsity, intent to mislead, reasonable reliance, and resulting

injury.  A constructive fraud action does not require proof of intent."  *Rubin v. Schottenstein,*

*Zox, & Dunn*, 143 F.3d 263, 270 (6th Cir. 1998).  Fraud in a common law churning cause of

action does not arise from a deception surrounding a particular investment decision.  Rather,

constructive fraud arises from frustration of the customer's expectation that if he delegates

authority to a broker to make investment decisions for him, the broker will act in the customer's

best interest and not his own.  *Santa Fe Industries v. Green*, 430 U.S. 462, 471-74 (1977).

---

 [3] "[The] dichotomy between the federal and state authorities with respect to a definition of churning offers opportunities for plaintiffs.  State judges do not appear to be bound, as are their federal counterparts, by the rigidities of a specific definition comprised of specific elements and are therefore free to react with considerable flexibility to a 'viscerally raw' situation where a customer has been disadvantaged by a broker.  Indeed, state judges look to a variety of traditional state common law concepts in analyzing churning under state law."  6 Bromberg & Lowenfels on Securities Fraud § 13:138 (2d ed.).

 [4] Churning, as a stock manipulation involving a breach of the customer's confidence, constitutes a deception arising theoretically from a broker's violation of his or her promise to fairly deal with the customer implied from the customer-broker relationship.  *See, e.g.*, *Twomey*, 262 Cal. App. 2d at 690.

(4:11CV00129)

Comparatively, in order to prevail on a securities fraud claim under § 10(b) or Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *Miller,* 346 F.3d at 673 (citing *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999)).  The Supreme Court has defined "scienter" as a "mental state embracing intent to deceive, manipulate or defraud." *Burns v. Prudential Sec., Inc.*, 116 F. Supp. 2d 917, 923 (N.D. Ohio 2000) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976)).

Allegations of fraud under the Securities Act must be pled with enough specificity so as to give rise to "a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  Merely pleading facts establishing that "a defendant had the motive and opportunity to commit securities fraud" does not establish scienter under the Securities Act. *In Re Comshare*, 183 F.3d at 549.  A private cause of action will not lie under § 10(b) of the Securities Exchange Act of 1934 or Rule 10b-5 in the absence of scienter on the part of the defendant (*i.e.*, an intent to deceive, manipulate, or defraud). *Ernst*, 425 U.S. at 193.

In assessing whether the complaint at issue pleads a common law churning cause of action or a federal securities fraud cause of action under § 10(b) or Rule 10b-5, the Court is mindful that a complaint does not establish a "strong inference" of scienter by merely alleging facts demonstrating motive and opportunity where those facts do not simultaneously establish that Defendants acted recklessly or knowingly, or with the requisite state of mind.  The Court is also mindful that a defendant raising the artful pleading doctrine may not rely on facts not alleged

-9-

(4:11CV00129)

in the complaint.  *Caterpillar Inc.*, 482 U.S. at 397.  "Although *occasionally* [a] removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization, most of them correctly confine this practice to areas of the law pre-empted by federal substantive law."  *Id.* at 397 n. 11 (emphasis added).

The Sixth Circuit has stated that while facts regarding motive and opportunity may be "relevant to pleading circumstances from which a strong inference of fraudulent scienter may be inferred[,]" and may, on occasion, rise to the level of creating a strong inference of reckless or knowing conduct, the bare pleading of motive and opportunity and even the mere mention of the term, does not, standing alone, constitute the pleading of a strong inference of scienter.[5]  *In Re Comshare*, 183 F.3d at 551.  The Pipinos' complaint fails to adequately allege the scienter required for a cause of action under § 10(b) or Rule 10b-5.  *See Mansbach*, 598 F.2d at 1026.

Simply put, the Pipinos' complaint articulates common law churning and unsuitability claims which express frustration of the Pipinos' expectation that, upon delegating Defendants authority to make investment decisions on the Pipinos' behalf, Defendants would act in the best interest of the client, not on their own behalf.  The Pipinos' reliance upon federal case law to prove the viability of their state law claims does not transform those state law claims into federal claims.

---

[5]  If the mere mention of "scienter" were sufficient to convert a state common law claim into a federal one, there would be absolutely no question of the untimeliness of the removal given that the Pipinos' complaint uses the term, albeit without elaboration, in its suitability claim.  ECF No. 1-1 at 9.  The issue of untimely filing is discussed later in this Memorandum.

(4:11CV00129)

### (2).  Substantial Federal Question Doctrine

"Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law." *Mikulski*, 501 F.3d at 565 (citing *Franchise Tax Bd. of Cal.*, 463 U.S. at 9).  "[T]he 'law that creates the cause of action' is state law, and original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Mikulski*, 501 F.3d at 565 (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 13).  Likewise, the "mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction, either originally or on removal." *Mikulski*, 501 F.3d at 565.  Federal courts must determine jurisdiction on an issue-by-issue basis. *Id*.

The substantial federal question doctrine does not catapult the Pipinos' claims from state law to federal.  There must be a substantial federal question that is an integral element of the plaintiff's claim for relief, not merely an ancillary federal issue or a claim that, properly analyzed, arises only under state law. *City of Warren*, 495 F.3d at 286-87 (reversing denial of remand, holding that plaintiff's cause of action did not arise under federal law where a substantial, disputed, question of federal law was not a necessary element of the claim); *see also Eastman v. Marine Mechanical Corp.*, 438 F.3d 544 (6th Cir. 2006).  Here, the Pipinos' complaint, in general, or its common law churning and unsuitability claims, in particular, does not invoke or reference federal law.  Therefore, the Pipinos have not alleged a federal question, nor a

-11-

(4:11CV00129)

"substantial" federal question, but rather claims that arises under state law.

### (3). Complete Preemption Doctrine

"The complete-preemption doctrine applies in circumstances in which Congress may intend the preemptive force of a federal statute to be so extraordinary that 'any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Mikulski*, 501 F.3d at 563 (citing *Caterpillar Inc.*, 482 U.S. at 393).[6]  The Supreme Court "has found complete preemption in only three classes of cases: Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185; the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*.; and the National Bank Act, 12 U.S.C. § 38 *et seq*." *Mikulski*, 501 F.3d at 563-64 (citing *Beneficial Nat'l Bank*, 539 U.S. at 7-9).  In these areas, federal law does not merely preempt a state law to some degree; rather, it substitutes a federal cause of action for the state cause of action, thereby manifesting Congress' intent to permit removal. *Burns*, 116 F. Supp. 2d at 921.  The Sixth Circuit has "recognized that complete preemption is a limited rule." *Mikulski*, 501 F.3d at 564.

Without much conviction, Defendants argue that the complete preemption doctrine supports removal, stating that "[a]t least *two, and possibly all three*, of these exceptions warranted removal of this lawsuit to federal court." ECF No 12 at 2 (emphasis added).  Clinging limply to the Sixth Circuit's ruling that the National Flood Insurance Act completely preempted

---

[6]  Removal of the state claim is permitted "because '[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. *Aetna*, 542 U.S. at 207 (citing *Beneficial Nat'l Bank*, 539 U.S. at 8).

(4:11CV00129)

state law because it explicitly conferred original jurisdiction on the federal courts, Defendants

timidly suggest that "it could also be argued here that the federal securities laws completely

preempt any state law governing Plaintiff's churning and unsuitability claims," because the

Securities Exchange Act, 15 U.S.C. § 78aa, explicitly confers exclusive jurisdiction on the

federal courts, therefore, complete preemption must follow.  ECF No. 12 at 10

The complete-preemption doctrine was first used by the Supreme Court in its decision in

*Avco Corp. v. Aero Lodge*, 390 U.S. 557 (1968).  In *Avco Corp.*, the Supreme Court held that

Avco's claim necessarily arose under Section 301 of the Labor Management Relations Act

(LMRA) and was removable even though the company apparently had pled only state law claims

and had sought a remedy available only under state law.  *Id.*  In *Metropolitan Life Ins. Co. v.*

*Taylor*, the Supreme Court held the legislative history of ERISA unambiguously described an

intent to treat such actions "as arising under the laws of the United States in similar fashion to

those brought under section 301 of the Labor-Management Relations Act of 1947."  481 U.S. 58,

65-66 (1987).  In *Beneficial Nat'l Bank v. Anderson*, the Supreme Court upheld the removal of

an action to recover damages from a national bank for allegedly charging excessive interest in

violation of both common-law usury doctrine and state statutory usury law, holding that the

National Bank Act completely preempted plaintiffs' claims, so as to render them claims arising

under federal law.  539 U.S. at 8.

In the instant matter, the legislative history of § 10(b) and Rule 10b-5 and statutory

language do not unequivocally evince Congress' intent to displace state law actions in the

absence of manipulation or deception.  In *Santa Fe Industries, Inc. v. Green*, the Supreme Court

-13-

(4:11CV00129)

reasoned:

> The language of § 10(b) gives no indication that Congress meant to prohibit any
> conduct not involving manipulation or deception.  Nor have we been cited to any
> evidence in the legislative history that would support a departure from the
> language of the statute.  'When a statute speaks so specifically in terms of
> manipulation and deception, . . . and when its history reflects no more expansive
> intent, we are quite unwilling to extend the scope of the statute . . ..' *Id*., at 214, 96
> S.Ct., at 1390. Thus the claim of fraud and fiduciary breach in this complaint
> states a cause of action under any part of Rule 10b-5 only if the conduct alleged
> can be fairly viewed as 'manipulative or deceptive' within the meaning of the
> statute.

430 U.S. 462, 473-74 (1977).  The Court expounded:

> As the Court noted in Ernst & Ernst: 'Neither the intended scope of § 10(b) nor
> the reasons for the changes in its operative language are revealed explicitly in the
> legislative history of the 1934 Act, which deals primarily with other aspects of the
> legislation.' 425 U.S., at 202, 96 S.Ct., at 1385. The only specific reference to §
> 10 in the Senate Report on the 1934 Act merely states that the section was 'aimed
> at those manipulative and deceptive practices which have been demonstrated to
> fulfill no useful function.' S.Rep.No.792, 73d Cong., 2d Sess., 6 (1934).

*Id*. at 473 n. 13.

Defendants have shown no basis in law or legislative intent to extend the complete

preemption doctrine to a permit the federal law to usurp all violations related to securities.

Claims pled under state law, even if they could be construed as arising under federal law, *may* be

removable but are by no means completely preempted.

### 2.  Timing of Removal

Generally, removal should occur within thirty days of receipt of the initial pleading or

service of the summons or, if "the case stated by the initial pleading is not removable," within

thirty days of  receipt of a motion or other paper "from which it may first be ascertained that the

case is one which is or has become removable." 28 U.S.C. § 1446(b).

-14-

(4:11CV00129)

In this case, removal occurred approximately three months after service of the complaint. Defendants urge that the removal is timely because Defendants removed within thirty days of "Defendants' receipt [] of Plaintiffs' Brief in Opposition." ECF No. 1 at 4, ¶10. The Court is not convinced.

Untimely removal is a defect within the meaning of the removal statute and an independent and adequate basis for remand. *State of Ohio v. Bulgartabac*, 167 Fed.Appx. 512, 515 (2006) (citing *Things Remembered, Inc. v. Petrarca*, 561 U.S. 124, 128 (1995)). Remand due to any defect other than the lack of subject matter jurisdiction must be made within thirty days after filing of the notice of removal. 28 U.S.C. § 1447(c). The Pipinos timely sought remand within thirty days of removal.

Wisely anticipating a challenge to the timeliness of its removal, Defendants explained that, in its opposition to Defendants' motion to dismiss, for the "first time in this action," the Pipinos "invoked the protections of the federal securities laws or any other laws giving rise to original jurisdiction" in federal court. ECF No. 1 at 4, ¶7. While it might be that it was not until reviewing the Pipinos' opposition that Defendants believed a federal question might exist. The pleadings defy the allegation that the Pipinos "invoked" federal law.

From the filing of its responsive pleading, Defendants' litigative effort was focused with laser beam like precision on the very claims–churning and unsuitability– later used to remove the action to federal court. It strikes as more than mere coincidence, that these two claims were also the only substantive claims for which dismissal were sought. After mining for federal jurisdiction in the Pipinos' opposition to dismissal, Defendants removed. Yet, nothing had

-15-

(4:11CV00129)

changed.  The complaint still alleged only state law violations.  Citing federal case law in opposition to a motion to dismiss does not convert state law claims into federal ones any more than alleging a federal defense does.  *Caterpillar Inc.*, 482 U.S. at 392 ("federal jurisdiction exists only when a federal question is presented on the face of the plaintiffs' properly pleaded complaint.").

The initial pleading placed Defendants on notice of the nature of the claims when served in late October 2010.[7]  If removal was to be effected at all, it should have occurred no later than thirty days after service of the initial pleading.  Removal was effected nearly ninety days after service of the initial pleading and, therefore, is untimely.

### III.  Conclusion

While it is axiomatic that when a defense to a state claim is based upon federal law, federal law will have to be consulted to resolve the matter.  The presence of a federal question, in a defensive argument, however, does not override the well-pleaded complaint rule's maxims that the plaintiff is the master of the complaint; that a federal question must appear on the face of the complaint; and that the plaintiff may, when given a choice of venues, simply choose to have her case heard in state court.  "A defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated."  *Caterpillar Inc.*, 482 U.S. at 399.  If a defendant had such power, the plaintiff would be master of nothing.

---

[7]  The Pipinos' claim to have effected service on all Defendants by October 29, 2010. ECF No. 10 at 1.  Defendants acknowledge that the last of them was served on October 25, 2010.

(4:11CV00129)

Congress has long since decided that federal defenses do not provide a basis for removal.  *See id*.

     For the foregoing reasons, the Court grants Plaintiffs Samuel and Loraine Pipino's

Motion to Remand to State Court.


IT IS SO ORDERED.


April 29, 2011                                                 *s/ Benita Y. Pearson*
Date                                                                        United States District Judge